## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **BAYLOR ALL SAINTS MEDICAL** | § | |
| **CENTER d/b/a BAYLOR SCOTT &** | § | |
| **WHITE ALL SAINTS MEDICAL** | § | |
| **CENTER – FORT WORTH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-00156-O** |
| | § | |
| **XAVIER BECERRA, SECRETARY,** | § | |
| **UNITED STATES DEPARTMENT** | § | |
| **OF HEALTH AND HUMAN** | § | |
| **SERVICES,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 14),  Brief in Support (ECF No. 15), and Appendix in Support (ECF No. 16), filed on June 28, 2024; Defendant's Cross-Motion for Summary Judgment (ECF No. 17), Brief in Support (ECF No. 18), and Appendix in Support (ECF No. 19), filed on August 27, 2024; Plaintiff's Response (ECF No. 20), filed on September 26, 2024; and Defendant's Reply (ECF No. 21), filed on October 28, 2024. Having considered the briefings and applicable law, the Court concludes that Defendant's decisions were not arbitrary and capricious or contrary to law. The Court, therefore, **GRANTS** Defendant's Cross-Motion for Summary Judgment (ECF No. 28) and **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 38).

I.      **BACKGROUND**[1]

This case is about the rules a party must follow when in front of the Provider Reimbursement Review Board ("PRRB" or "the Board"). Congress created the Board to serve as the administrative tribunal to hear Medicare Part A payment disputes exceeding $10,000. 42 U.S.C. § 1395oo(a). To fulfill its obligation, the Board has established rules and procedures for providers who challenge their Medicare reimbursements. *See generally* 42 C.F.R. Part 405, Subpart R. If a provider fails to meet a filing deadline or other Board requirement, the Board may dismiss its administrative appeal. *See id.* § 405.1868(b).

A.      **Medicare Payment Systems Appeals and Rules**

The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. §1395c. The Medicare program is federally funded and administered by the Secretary through the Centers for Medicare & Medicaid Services (CMS) and its contractors. 42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13262 (Mar. 9, 1977). The details about how hospitals are reimbursed are not at issue in this case.[2]

B.      **Relevant Rules**

The appeals process and Board Rules relevant to this dispute focus on the filing of an administrative appeal and the subsequent briefings required before a final hearing in front of the Board. At the close of its fiscal year, a provider must submit a cost report to the Medicare Administrative Contractors ("MAC") showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. Each hospital's MAC is

---

[1] Unless otherwise indicated, all facts are taken from the parties' summary judgment briefing. There is no indication in the summary judgment record—or at any stage in this litigation—that the parties disagree as to the relevant facts.

[2] For discussion of the Medicare Prospective Payment System, *see Evangelical Cmty. Hosp. v. Becerra*. No. 21-CV-01368 (APM), 2022 WL 4598546 (D.D.C. Sept. 30, 2022).

required to analyze and audit the hospital's annually-submitted Medicare-cost report. The MAC then issues a Medicare Notice of Program Reimbursement (NPR), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital must make a claim, or alternatively self-disallow, for any adjustment to its basic Inpatient Prospective Payment System payment adjustment, such as the disproportionate share hospital ("DSH") adjustment. 42 C.F.R. § 413.24(j).

A provider "dissatisfied" with an aspect of the Medicare contractor's determination of its Medicare reimbursement contained in its Notice of Program Reimbursement ("NPR") has 180 days after the NPR to file an appeal to the Board. 42 U.S.C. § 1395oo(a)(3). By statute, the Board can only have five members. *See id.* § 1395oo(h). The Board also faces a tremendous volume of appeals. 73 Fed. Reg. 30,190, 30,192 (final rule) (May 23, 2008) (noting backlog of 6,800 pending appeals). To promote the efficient processing of appeals, Congress granted the Board "full power and authority to make rules and establish procedures." 42 U.S.C. § 1395oo(e). Pursuant to this authority, CMS and the Board have promulgated a variety of measures to ensure that issues are presented to the Board in a clear and timely manner. Under these rules, which were all in effect before the appeal here, providers must identify key issues at least three times during a Board proceeding: (1) in the initial appeal/hearing request; (2) in a preliminary position paper; and (3) in a final position paper.

In the initial appeal request (also known as a request for hearing ("RFH")), providers must submit "a separate explanation of why, and a description of how, the provider is dissatisfied with the specific aspects of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(b). "For each specific item under appeal," the provider must also include an account of all the

following:

> (2)(i) Why the provider believes Medicare payment is incorrect for each disputed item . . . .

> (ii) How and why the provider believes Medicare payment must be determined differently for each disputed item.

> (iii) If the provider self-disallows a specific item (as specified in § 413.24(j) of this chapter), an explanation of the nature and amount of each self-disallowed item, the reimbursement sought for the item, and why the provider self-disallowed the item instead of claiming reimbursement for the item.

42 C.F.R. § 405.1835(b)(2)(i)–(iii). The preliminary position paper should provide a more detailed explanation of the issues identified in the RFH. The Board's rules notify hospitals:

> Under the Regulations effective August 21, 2008, all issues will have been identified well in advance of the due date for preliminary position papers. Unlike the prior practice, preliminary position papers now are expected to present fully developed positions of the parties and, therefore, require analysis well in advance of the filing deadline.[3]

Board Rule 25.1 states that a fully developed challenge in a preliminary position paper must, at a minimum, meet the following requirements: "(1) For each issue, state the material facts that support your claim. (2) Identify your controlling authority (e.g., statutes, regulations, policy, or case law) supporting your position. (3) Provide a conclusion applying the material facts to the controlling authorities."[4] As for the final position paper, the Board's rules state that it should "reflect the refinement of the issues from the preliminary position paper."[5] The rules further state that the "final position paper should address each remaining issue including, at a minimum" the following:

> a.  Identification of each issue and its reimbursement impact.

> b.  Procedural history of the dispute.

---

[3] *See* Def.'s App. 226 (PRRB Rules (July 1, 2015), Commentary to Rule 25), ECF No. 19.
[4] *Id.* (emphasis in original).
[5] *Id.* at 299 (PRRB Rule 27.1).

    c.  A statement of facts that:

        i.  Indicates which facts are undisputed.

        ii.  Indicates, for each material disputed fact, the evidence that the party asserts supports those facts with supporting exhibits and page references.

    d.  Argument and Authorities – A thorough explanation of the party's position of how the authorities apply to the facts.[6]

Additionally, the Board provides rules for when a party can add issues to a Board appeal. Hospitals must add new issues to their original hearing request within 60 days of the expiration of the original 180-day period for appeal. 73 Fed. Reg. at 30,249–50; 42 C.F.R. § 405.1835(e). The Board specifies that failure to comply with the Board's regulation may result in dismissal of the appeal. 42 C.F.R. § 405.1868(b) ("If a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order, the Board may – (1) Dismiss the appeal with prejudice"); *see also id.* § 405.1835(b) ("If the provider submits a hearing request that does not meet the requirements . . . of this section, the Board may dismiss with prejudice the appeal or take any other remedial action it considers appropriate.").

    **C.**    **Administrative Proceedings**

On April 29, 2016, the MAC issued an NPR for the Hospital's calendar year end September 30, 2013.[7] On October 27, 2016, Plaintiff timely filed an appeal of this NPR.[8] Specifically Plaintiff appealed the non-inclusion of Medicaid eligible days, saying "[t]he MAC, contrary to the regulation, failed to include all Medicaid eligible days, ***including but not limited to*** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation."[9]

---

[6] *Id.* at 229–30 (PRRB Rule 27.2).
[7] Administrative R. 0172–74, ECF No. 12.
[8] *Id.* at 56.
[9] *Id.* at 60. (emphasis added).

On December 18, 2023, the Board dismissed the Provider's appeal because of what the Board termed the "§ 1115 Waiver Days issue."[10] That is, "[t]he Board . . . dismisse[d] the § 1115 Waiver Days issue, as the Provider failed to appeal this issue in its Appeal Request, nor was the issue timely or properly add[ed] to the appeal."[11] The Board also held that "even if the Provider had included [Section 1115 waiver days] in its appeal request (which it did not), the Provider failed to properly develop the issue in its position paper filings."[12]

### D.    Procedural History

On February 15, 2024, Plaintiff, Baylor All Saints Medical Center d/b/a Baylor Scott & White All Saints Medical Center- Fort Worth, timely filed its Complaint seeking judicial review of this decision under the Medicare Act, and as arbitrary, capricious, an abuse of discretion, otherwise contrary to law, and unsupported by substantial evidence under the APA.[13] Defendant, Secretary Becerra in his official capacity as Secretary of Health and Human Services, answered the Complaint on April 26, 2024,[14] and the parties entered a joint stipulation to dismiss without prejudice Counts II-VII on June 27, 2024, which the Hospital filed for purposes of efficiency and to seek to resolve as swiftly as possible this issue of hospital reimbursement.[15]

---

[10] *Id.* at 75.
[11] *Id.*
[12] *Id.* at 72.
[13] Pl.'s Comp. ¶¶ 44–46, ECF No. 1.
[14] Def.'s Answer, ECF No. 7
[15] *See* Joint Stipulation of Partial Dismissal without Prejudice, ECF No. 13.

II.    **LEGAL STANDARDS**

A.    **Summary Judgment**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[A] material fact is genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

A party seeking summary judgment must inform the court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must then set forth specific facts showing that there is a genuine issue for trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). Here, the questions before the Court are purely legal in nature and contain no fact disputes.

B.    **The APA**

The Administrative Procedure Act ("APA") "authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (alteration in original) (quoting 5 U.S.C. § 702). Upon review of agency action, the APA requires the district court to "hold unlawful and set aside agency action" that the court finds is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right; [and] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)–(D).

Disputes arising under the APA are commonly resolved on summary judgment, where district courts sit as appellate tribunals to decide legal questions on the basis of the administrative record. *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022). In APA cases challenging agency action, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Gadhave v. Thompson*, 2023 WL 6931334, at *1 (N.D. Tex. Oct. 19, 2023) (citations omitted). The agency "resolve[s] factual issues to arrive at a decision supported by the administrative record," and the district court applies the APA standards of review to determine whether, as a matter of law, "the evidence in the administrative record permitted the agency's decision." *Yogi Metals Grp. Inc. v. Garland*, 567 F. Supp. 3d 793, 797–98 (S.D. Tex. 2021), *aff'd*, 38 F.4th 455 (5th Cir. 2022) (internal quotation marks and citation omitted). A "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E); *see also* 42 U.S.C. §1395oo(f)(1).

## III.     ANALYSIS

Plaintiff raises three arguments in support of its request for the Court to overrule the Board's Decision: (1) The Board's decision was arbitrary and capricious; (2) The Board's decision was contrary to its own rules; and (3) The Board's rules themselves are arbitrary and capricious.[16] In response, Defendant argues the Board determined that Plaintiff had not properly appealed the

---

[16] *See* Pl.'s Br. in Supp. Mot Summ. J. 11–17, ECF No. 15.

number of Section 1115 waiver days as a component of the DSH Medicaid fraction.[17] And, alternatively, the Board evaluated Plaintiff's position papers and determined that Plaintiff had not shown it was entitled to relief on Section 1115 waiver days.[18]

Having examined the administrative record, the Court agrees with Defendant that Plaintiff's position papers inadequately briefed the issue in its position papers. For this reason and the reasons given below, the Court agrees with Defendant that the Board's decision was not arbitrary and capricious.

### A.    Arbitrary and Capricious

Plaintiff argues that the Board's decision to dismiss its appeal was arbitrary and capricious because "42 C.F.R. § 405.1835(b)(2), [] implements a provider's right to appeal an NPR under the Medicare Act."[19] Defendant responds by arguing that the Board's decision was not arbitrary and capricious because "Plaintiff did not follow [the Board's] rules."[20] The Court holds that the Board did not act arbitrarily and capriciously or contrary to 42 C.F.R.  § 405.1835(b)(2) because Plaintiff failed to follow the Board's rules.

Congress vested the Board with the "full power and authority to make rules and establish procedures, not inconsistent with the provisions of [the Medicare Statute] or regulations of the Secretary, which are necessary or appropriate to carry out" its duties. 42 U.S.C. § 1395oo(e); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 156 (2013). A "court lacks authority to undermine the regime established by the Secretary unless her regulation is arbitrary, capricious, or manifestly contrary to the statute." *Auburn Reg'l*, 568 U.S. at 157 (internal quotation marks and citation omitted).

---

[17] Def.'s Br. in Supp Mot. Summ. J 15–16, ECF No. 18.
[18] *Id.* at 16.
[19] Pl.'s Br. in Supp. Mot Summ. J. 11, ECF No. 15.
[20] Def.'s Br. in Supp Mot. Summ. J 23, ECF No. 18.

Here, the Board properly dismissed Plaintiff's appeal because Plaintiff undoubtably did not comply with the Board's preliminary position paper requirements for Board appeals. Initially, Plaintiff arguably violated the Medicare statute, regulations, and Board rules in its RFH (its appeal request) because it failed to identify the final reimbursement decision that it wished to challenge.[21] *See* 42 U.S.C § 1395oo(a)(1)(A)(i)–(ii); 42 C.F.R. § 405.1835. Plaintiff did not include Section 1115 waiver days as one of the specifically enumerated reimbursement decisions it wished to challenge. Instead, Plaintiff included a general catch-all "including but not limited to" before enumerating the decisions it wished to challenge.[22]

Far more damaging to Plaintiff's contention that Section 1115 days were properly appealed is that Plaintiff *again* failed to identify the issue in its preliminary position paper, in violation of 42 C.F.R. § 405.1853(b) and PRRB Rule 25.[23] Plaintiff did not even mention Section 1115 waiver days in its preliminary position paper.[24] Plaintiff did not raise the Section-1115-waiver-days issue by name until it filed its *final* position paper—seven years after filing its appeal—thus finally identifying to the Board the issue it wished to challenge.[25]

For starters, in a provider's RFH, the provider must submit "a separate explanation of why, and a description of how, the provider is dissatisfied with the specific aspects of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(b). Even assuming *arguendo* that the catch-all included Section 1115 waiver days in the RFH, the preliminary position paper was nonetheless wholly inadequate. This factual finding by the Board is supported by more than substantial

---

[21] Def.'s App. 209 (PRRB Rule 8.1–8.2), ECF No. 19.
[22] Administrative R. 182, ECF No. 12.
[23] *See* Def.'s App. 226 (PRRB Rule 25.1(A)), ECF No. 19.
[24] Administrative R. 72, ECF No. 12.
[25] Defendant raises an argument that Plaintiff's final position paper improperly. The Court does not reach this issue because even if Plaintiff's final position paper is proper, Plaintiff did not follow the board's rules for Section 1115 waiver days in the preliminary position paper.

evidence. It is undisputed that Plaintiff did not develop (or even mention) the Section 1115 waiver issue in its preliminary position paper.[26] Plaintiff attempts to dismiss the Board's alternative holding as dicta.[27] It is not.

For its alternative holding, the Board cited 42 C.F.R. §§ 405.1853(b)(2)–(3) and 412.106(b)(4)(iii) and PRRB Rules 25 and 27 to confirm that Plaintiff had the burden of furnishing data to prove eligibility for each Medicaid patient day by a preponderance of the evidence.[28] The Board held that Plaintiff's preliminary position paper did not meet this burden.[29]

The Board's Rule 25 states: "(1) For each issue, state the material facts that support your claim. (2) Identify your controlling authority (e.g., statutes, regulations, policy, or case law) supporting your position. (3) Provide a conclusion applying the material facts to the controlling authorities."[30] In addition to the clear text of Rule 25, commentary to the Board's rules explains "preliminary position papers now are expected to present fully developed positions of the parties and, therefore, require analysis well in advance of the filing deadline."[31]

Plaintiff's catch-all—"including but not limited to"—cannot remedy wholly absent Section 1115 days in the preliminary position paper. Plaintiff argues that by including the catch-all, it properly included Section 1115 waiver days in its RFH.[32] But this cannot explain the failures in Plaintiff's preliminary position paper. As explained by another circuit, the Board "was under no duty to hunt around in the record . . . in an attempt to discern the nature of [the plaintiff's] legal claims." *See High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1313 (10th Cir. 2004).

---

[26] Administrative R. 72, ECF No. 12.
[27] Pl.'s Resp. 14, ECF No. 20.
[28] Administrative R. 72–73, ECF No. 12.
[29] *Id.* at 73.
[30] Def.'s App. 226 (PRRB Rule 25.1(A)), ECF No. 19 (emphasis in original).
[31] *Id.* (PRRB Rules (July 1, 2015), Commentary to Rule 25)).
[32] *See generally* Pl.'s Br. in Supp. Mot. Summ. J. 11–17, ECF No. 15

Plaintiff's reliance on *Forrest General Hospital v. Azar* is misguided. 926 F.3d 221 (5th Cir. 2019). Both parties agree "the law governing the inclusion of § 1115 waiver patient days in the Medicaid fraction is straightforward: The plain regulatory text demands that such days be included—period." *Id.* at 234 (citation omitted). That said, the law does not demand reimbursement when a party omits to appeal the issue or does not brief the issue in a preliminary position paper. *Forrest General Hospital* did not upset the Board's rules regarding preliminary position papers, but instead held "HHS's decision to exclude UCCP patient days from the Medicaid fraction's numerator is 'not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)).

Plaintiff arguably failing to identify the issue in its RFH *and* certainly failing to brief the issue in its preliminary position paper. The Board did not act arbitrarily and capriciously by dismissing Plaintiff's appeal. "The Board's procedural rules empower the body to dismiss a provider's appeal when the provider's RFH or Preliminary Position Paper is deficient." *Evangelical Cmty. Hosp. v. Becerra*, No. 21-CV-01368 (APM), 2022 WL 4598546, at *5 (D.D.C. Sept. 30, 2022).[33] Even accepting Plaintiff's argument that the RFH was sufficient, Plaintiff has provided no arguments for failure to include Section 1115 days in its preliminary position paper. Because Plaintiff failed to follow the Board's rules, the Court holds that the Board's decision was not arbitrary and capricious. The Board properly dismissed Plaintiffs appeal.

B.    **Plaintiff's Alternative Arguments**

Plaintiff's alternative arguments, that the Board acted contrary to its own rules and that the rules themselves are arbitrary and capacious, rely entirely on the RFH notice of appeal requirements.[34] Plaintiff provides no arguments that the Board's secondary holding, that the failure

---

[33] *See Evangelical Cmty. Hosp.*, 2022 WL 4598546, at *4 (collecting cases that upheld the Board's authority to dismiss appeals that violate the Board's rules).

[34] Plaintiff does not develop the final two arguments in its Motion, instead relegating its reasoning to a single footnote only mentioning arbitrary and capricious. *See* Pl.'s Br. in Supp. Mot. Summ. J. 17 n.7,

to include Section 1115 waiver days in the preliminary position paper warrants dismissal, was contrary to the Board's rules or that the Board's rules regarding preliminary position papers are arbitrary and capacious. Accordingly, because the Court affirms the Board's decision that the preliminary position paper was deficient, the Court does not address Plaintiff's final RFH arguments.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's'Motion for Summary Judgment (ECF No. 14) and **GRANTS** Defendant's Cross-Motion for Summary Judgment (ECF No. 17). Accordingly, Plaintiffs claim is **DISMISSED with prejudice**. Final Judgment shall follow separately.

**SO ORDERED** this **21st day** of **March, 2025**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

ECF No. 15 ("The Board's alternative reason for dismissing the appeal—that the Hospital's position papers were not well developed with respect to Section 1115 Waiver Days—is arbitrary and capricious for the same reasons discussed above.").